IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

HAROLD HEMPSTEAD,
    Plaintiff,

vs.                                      Case No: 5:06cv68/MCR/EMT

STEPHEN CARTER, et al.,
    Defendants.
_____/

**ORDER**

        This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 10).  Leave to proceed in forma pauperis has been granted (Doc. 14).  From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under § 1983 as to some or all of the named Defendants.  Therefore, the court will allow Plaintiff an opportunity to clarify his allegations in a second amended complaint.

        Plaintiff names nine Defendants in this action, all correctional officers at Washington Correctional Institution (WCI): Stephen Carter, Terry Frye, Sgt. Jonathan Cook, Col. J. S. McAlpin, Capt. Scott, R. Hill, M. E. Tate, Christopher Christmas, and Sgt. Shaw (Doc. 10 at 1, 2A-2B).  Plaintiff is suing all Defendants in their individual capacities (*id*. at 1).  Plaintiff alleges that Defendants retaliated against him for filing grievances by filing a false disciplinary report against him (*id*. at 7I).  On November 23, 2005, while Plaintiff was in the shower stall next to cell G4-101, he observed Defendant Tate ripping off thin pieces of a white sheet in front of G4 in the area of the sally port (*id*. at 7D).  The next day, Defendants Carter and Frye handcuffed Plaintiff and placed him in the shower stall near his cell, entered his cell for approximately one minute, then returned Plaintiff to his cell (*id*).  Plaintiff observed nothing in the possession of either officer when they exited the cell, and he noticed two legal envelopes out of place when he was returned to his cell (*id*. at 7E).

Defendant Hill attempted to get Plaintiff to sign a property slip for an ice pick (*id*. at 7K). The ice pick apparently had a handle made from a white sheet (*id*. at 7G). Three days later, Defendant Shaw served Plaintiff with a disciplinary report for possession of a weapon (*id*. at 7E).

Plaintiff states that he has filed a large number of grievances (*id*.). On two occasions prior to Plaintiff receiving the disciplinary report for weapon possession, he observed correctional officers on the same shift enter the cells of other inmates who were also known for filing grievances and subsequently charge those inmates with possession of a weapon (*id*. at 7A-7D). On October 12, 2005, Plaintiff observed Defendants Carter and Hill take the inmates out of Inmate Hartley's cell, enter the cell for about five minutes, then return the inmates to the cell (*id*. at 7A). Plaintiff subsequently learned that Inmate Hartley had filed lawsuits and grievances against WCI staff, had received a disciplinary report for possession of a weapon (an ice pick), and claimed the disciplinary report had been fabricated in retaliation for his pending legal actions (*id*. at 7A-7B). Similarly, Plaintiff alleges that on October 26, 2005, Defendants Cook and Tate searched the cell Plaintiff shared with Inmate Caprice (*id*. at 7B). Upon their departure, Plaintiff observed nothing in their possession (*id*. at 7C). Inmate Caprice was subsequently charged with possession of a weapon (an ice pick) (*id*.). Inmate Caprice had filed a large number of grievances and told Plaintiff that he had never seen an ice pick and was being retaliated against (*id*.). Plaintiff witnessed a conversation between Defendant Tate and Inmate Caprice in which Defendant Tate stated, "Don't hate me. I was just doing what I was told to do. You've been down a while. You know how it is." (*id*.).

Both Inmates Hartley and Caprice were found guilty of possession of a weapon, and Inmate Hartley was placed on close management as a result (*id*. at 7D). Plaintiff asserts that the 3:00 p.m. to 11:00 p.m. shift did not find any knives in the confinement unit despite conducting cell searches six days a week (*id*. at 7J). Also, inmates are strip searched upon entry into the confinement unit (*id*.). Plaintiff had a conversation with Defendant Tate on November 29, 2005, about staff having "set up" three inmates in the same confinement unit, all known for writing grievances (*id* at 7F). Plaintiff told Defendant Tate he would be filing a suit for retaliation, and Defendant Tate responded, "I admit what I did to Caprice. But I had nothing to do with you . . . ." (*id*.). Plaintiff then accused Defendant Tate of ripping up sheets to make the handle for the ice pick allegedly planted in Plaintiff's cell (*id*. at 7G). Later that day, Defendant Tate told Plaintiff he had been thinking about

their conversation and that Plaintiff was "just like all the other inmates" because he files "grievance after grievance" without expecting anyone to get mad (*id*. at 7G-7H). Defendant Tate then told Plaintiff that his problem was not with confinement staff but instead with Defendant McAlpin and Defendant Scott (*id*. at 7H).

When Defendant Shaw served Plaintiff with the disciplinary report regarding the ice pick, he asked Plaintiff about the evidence and witnesses Plaintiff wanted to present at the disciplinary hearing (*id*. at 7E-7F). Plaintiff indicated that he wanted to present videotapes from the date and time of the three cell searches as evidence (*id*. at 7E). Plaintiff additionally indicated that he wanted to call seven witnesses, including staff members and inmates (*id.* at 7F). Defendant Shaw told Plaintiff he would list the evidence after Plaintiff signed the evidence form; Plaintiff signed the form without any evidence listed (*id*. at 7E). Defendant Shaw apparently listed some of Plaintiff's requested witnesses, but told Plaintiff he would list the rest after Plaintiff signed the witness sheet (*id*. at 7F). Plaintiff signed the witness sheet with the understanding that the rest of his requested witnesses would be added to the list later (*id*.). However, at the disciplinary hearing on December 1, Plaintiff was advised that Defendant Shaw had not listed the evidence he requested, nor all of the witnesses (*id*. at 7H). Plaintiff asserts he would have been able to prevail on the disciplinary report had he been able to present the witnesses and evidence he requested (*id*.).

Plaintiff alleges that Defendants McAlpin, Scott and Cook supervised Defendants Carter and Frye, and they "authorized Plaintiff being set up with the ice pick" (*id*. at 7I). Plaintiff further alleges that he "had harsh run-ins with Defendant McAlpin" at Wakulla Correctional Institution, and that Defendant Scott was the captain on each of the days the three inmates' cells were searched (*id*. at 7J-7K). Defendants McAlpin, Scott, Cook, Carter, Frye, Hill, Tate and Christmas each knew that Plaintiff was being retaliated against, and each took some act that "furthered the conspiracy" against Plaintiff (*id*. at 7K). Plaintiff alleges that each of the Defendants conspired with one another to violate his rights, and no similar activities occurred prior to Defendant McAlpin "taking over" at WCI (*id*. at 7L).

Plaintiff states that on December 2 and December 5, 2005, he submitted two informal grievances, one formal grievance regarding the disciplinary report, and one grievance "at the Tallahassee level" regarding reprisals (*id*. at 7I). Finally, Plaintiff alleges that on December 6, 2005,

he was transported to the Pinellas County Jail and was not allowed to take any blank grievance forms with him (*id*.).

Plaintiff claims that Defendants McAlpin, Scott, Cook, Carter, Frye, Hill, Tate and Christmas retaliated against him for filing grievances in violation of his First Amendment rights by conducting the false search and filing the false disciplinary report (*id*. at 8-8A). He also claims those Defendants conspired in their retaliation against him (*id*.). Additionally, he claims that Defendant Shaw violated his due process and equal protection rights by denying him the right to present evidence and witnesses in his defense during the disciplinary hearing (*id*. at 8B). As relief, Plaintiff seeks nominal, compensatory and punitive damages, as well as the filing fee and other legal costs associated with his civil rights complaint (*id*. at 9-9A). Finally, Plaintiff seeks an injunction "protecting [him] from the Defendants" (*id*. at 9A).

Initially, Plaintiff must show that he exhausted his administrative remedies as to each of his claims prior to initiating this lawsuit. Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 (PLRA), provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Thus, the court should dismiss a case if it determines that exhaustion has not been accomplished. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998); *see also* Anderson v. Singletary, 111 F.3d 801, 805 (11th Cir. 1997). "A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998).

Florida regulations establish a three-step grievance process within state institutions that includes an informal grievance, formal grievance and appeal to the office of the Secretary of the Department of Corrections (DOC). *See* Fla. Admin. Code rr. 33-103.005 to 103.007 (2003). An inmate is entitled to advance to the next step in the grievance process if he does not receive a timely response to a grievance. *See* Fla. Admin. Code r. 33-103.011(4). Grievances of reprisals may bypass the informal grievance step and may even be filed directly with the Secretary of the DOC. *Id.*, rr. 33-103.006(3), 33-103-007(6). That a plaintiff may have had to go through additional procedural "hoops" to exhaust does not render the grievance process unavailable to him or otherwise

excuse him from the exhaustion requirement. *See* Alexander, 159 F.3d at 1325-27. Indeed, he must correct any deficiencies in his grievances. If the court were to excuse exhaustion on this ground, it would impose an unintended loophole in the PLRA. *See id.* at 1326. As discussed *supra*, an inmate plaintiff must completely exhaust each of his claims prior to bringing them in federal court.

In the instant case, Plaintiff must clarify whether he exhausted his administrative remedies. Plaintiff states that on December 2 and 5, 2005, he filed two informal grievances, one formal grievance regarding the disciplinary report, and one grievance of reprisal at the Tallahassee level (Doc. 10 at 7I). In the exhaustion of administrative remedies section of the complaint form, Plaintiff directs the court to the exhibits attached to Plaintiff's original complaint (*id*. at 3). Upon review of these exhibits, the court notes that Exhibit A is a formal grievance filed on December 2, 2005 regarding all of the issues alleged in the amended complaint (Doc. 1, Ex. A). The response indicates it was returned to Plaintiff without review for noncompliance with grievance procedures because it related to more than one issue (*id*.). Exhibit B is a statement written by Plaintiff for inclusion in the record of his disciplinary proceedings (Doc. 1, Ex. B). As this statement relates to the disciplinary proceedings against Plaintiff, it does not appear to be relevant to Plaintiff's exhaustion of administrative remedies.

Plaintiff's Exhibit C is a letter to the Secretary's office appealing the formal grievance (Doc. 1, Ex. C). Plaintiff was unable to write the appeal on the proper form because he claims he had no access to DOC grievance forms at the time (*id*.). However, Plaintiff has failed to attach any response to his appeal from the Secretary's office, nor has he alleged that he received no response to his appeal. Additionally, he has failed to provide a copy of what was apparently a direct grievance to the Secretary's office sent on December 2 or December 5, 2005, related to the reprisal issue. Plaintiff should attach to his second amended complaint copies of all grievances submitted related to the facts in his claim as well as responses to demonstrate proper exhaustion of his administrative remedies. If Plaintiff cannot demonstrate full and proper exhaustion of his claims, his complaint is subject to dismissal.[1]

---

[1] Indeed, Plaintiff appears to concede that he has failed to exhaust his claims, asserting that he made a "good faith effort" to do so (*see* Doc. 10 at 3A). Plaintiff is advised that a "good faith effort" to exhaust is insufficient. *See* Woodford v. NGO, 126 S. Ct. 2378, 2382, 2387 (2006) (PLRA's exhaustion requirement requires proper exhaustion, including compliance with the DOC's procedural rules and deadlines, as a precondition to bringing suit in federal court).
Case No: 5:06cv68/MCR/EMT

Additionally, Plaintiff's claim for injunctive relief appears to be moot, as it appears from the Florida DOC website that he is no longer incarcerated at WCI. *See* www.dc.state.fl.us (reflecting that Plaintiff is presently housed at Florida State Prison). Therefore, he should drop his claim for injunctive relief from his second amended complaint. *See* Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988), Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985).

Furthermore, Plaintiff is advised that subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has decided that the phrase "Federal civil actions" means all federal claims, including constitutional claims. Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2000) (citing Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000) (en banc)). In order to satisfy section 1997e(e), a prisoner must allege more than a de minimis physical injury. Harris v. Garner, 190 F.3d 1279, 1286-87 (11th Cir. 1999), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *opinion reinstated in pertinent part en banc*, 216 F.3d 970 (11th Cir. 2000) ("We therefore join the Fifth Circuit in fusing the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson [v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)] for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold that in order to satisfy section 1997e(e) the physical injury must be more than de minimis, but need not be significant."); Osterback v. Ingram, 2000 WL 297840, 13 Fla. L. Weekly D 133 (N.D. Fla. 2000), *aff'd*. 263 F.3d 169 (11th Cir. 2001) (holding that a prisoner plaintiff may not recover compensatory or punitive damages for mental or emotional injury without establishing that he suffered more than de minimis physical injury). In the instant case, Plaintiff has not alleged any physical injury arising from Defendants' actions. Therefore, Plaintiff is not entitled to compensatory and punitive damages and should drop those claims from his second amended complaint.

Regarding the substance of his claims, Plaintiff must clarify his claims against Defendant Christmas, as the only allegation against Defendant Christmas is that he (along with seven other listed Defendants) committed some act which "furthered the conspiracy" against Plaintiff (*id*. at 7K).

However, Plaintiff has alleged <u>no</u> facts regarding any actions or statements by Defendant Christmas. If Plaintiff cannot state how Defendant Christmas violated his rights, he should delete Defendant Christmas from his second amended complaint.

Regarding Plaintiff's conspiracy claim, Plaintiff has failed to state a claim on the facts alleged. In civil rights actions, a complaint containing conclusory, vague, and general allegations of conspiracy will be dismissed as insufficient. <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 468 (11th Cir. 1990); <u>Arnold v. Bd. of Educ. of Escambia County, Ala.</u>, 880 F.2d 305, 309 n.2 (11th Cir. 1989); <u>Kearson v. S. Bell Tel. & Tel. Co.</u>, 763 F.2d 405, 407 (11th Cir. 1985). The complaint must demonstrate that the conspiratorial acts intruded upon Plaintiff's federal rights, and it must show that Defendants reached an agreement or understanding to commit the acts. <u>Bendiburg</u>, 909 F.2d at 468; *see also* <u>Harvey v. Harvey</u>, 949 F.2d 1127 (11th Cir. 1992); <u>Strength v. Hubert</u>, 854 F.2d 421, 425 (11th Cir. 1988); <u>Fullman v. Graddick</u>, 739 F.2d 553, 556-57 (11th Cir. 1984). Further, sufficient factual information must be presented so that there is an adequate basis for believing that the conspiracy existed. <u>Phillips v. Mashburn</u>, 746 F.2d 782, 785 (11th Cir. 1984).

In the instant case, Plaintiff's conclusory allegation that Defendants "had a meeting of the minds" (Doc. 10 at 7L) with one another to retaliate against Plaintiff is insufficient to state a claim. Unless Plaintiff can provide a background of material facts sufficient to support his allegation that a conspiracy existed, he should delete the conspiracy claim from his second amended complaint.

Furthermore, Plaintiff's retaliation claim is insufficient as alleged. The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. <u>Thomas v. Evans</u>, 880 F.2d 1235, 1242 (11th Cir. 1989). "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." *Id.* Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Id.* A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a lawsuit or administrative grievance concerning the conditions of his imprisonment. *See* <u>Wildberger v. Bracknell</u>, 869 F.2d 1467, 1468 (11th Cir. 1989). However, broad, conclusory allegations of retaliation are insufficient to state a claim under § 1983. <u>Goldsmith v. Mayor and City Council of Baltimore</u>, 987 F.2d 1064, 1071 (4th Cir. 1993); <u>Flittie v. Solem</u>, 827 F.2d 276, 281 (8th Cir. 1987); <u>Gill v. Mooney</u>, 824 F.2d 192, 194 (2d Cir. 1987). The prisoner

plaintiff must "sufficiently allege facts" establishing that the actions taken against him were in retaliation for filing grievances or lawsuits or otherwise accessing the courts. Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). He must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive. Jackson v. Fair, 846 F.2d 811, 820 (1st Cir. 1988). Plaintiff must allege a causal link between the protected activity and the adverse treatment, and there must be at least a "colorable suspicion" of retaliation for a complaint to survive and proceed into discovery. Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). "The relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (quoting Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)).

In assessing retaliation claims, appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (citing Sandin v. Conner, 515 U.S. 472, 487, 115 S. Ct. 2293, 2299, 132 L. Ed. 2d 418 (1995)). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury. . . ." Crawford-El v. Britton, 523 U.S. 574, 598, 118 S. Ct. 1584, 1596-97, 140 L. Ed. 2d 750 (1998) (internal quotation marks omitted). Indeed, while mindful that Plaintiff may not be held to a heightened burden of proof, *see* Crawford-El, 523 U.S. at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions and actions of prison officials and "the ease with which claims of retaliation may be fabricated." Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), *impliedly overruled in part on other grounds by* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

In the instant case, Plaintiff has failed to allege sufficient facts suggesting that the allegedly improper disciplinary action was taken against him due to improper retaliatory motives.[2] Although Plaintiff alleges that Defendants McAlpin, Scott and Cook authorized "setting up" Plaintiff because of his grievances (Doc. 10 at 7I), this is merely a conclusory allegation. The factual allegations linking the actions taken against Plaintiff with his grievances include the statement by Defendant Tate that Plaintiff files "grievance after grievance" without expecting anyone to become angry (*id*. at 7G-7H), and the fact that Plaintiff has admittedly filed a large number of grievances. These facts are inadequate to suggest a retaliatory motive. Unless sufficient facts exist to support his retaliation claims, Plaintiff should delete his retaliation claim from his second amended complaint.

Plaintiff has also failed to state an equal protection violation. The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). In order "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest," such as race, gender, or religion. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (internal quotation marks omitted). Thus, in order to assert a viable equal protection claim, Plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). Plaintiff must also allege Defendants acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. County of Escambia, 132 F.3d 1359, 1367-68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

In the instant case, Plaintiff claims Defendant Shaw violated his equal protection rights by preventing Plaintiff from presenting evidence and testimony in his defense at the disciplinary

---

[2]The court notes that Plaintiff has presented additional facts related to his retaliation claim in his Motion for Emergency Temporary Restraining Order (Doc. 12). Plaintiff is advised he should include all the facts he wishes the court to consider in his second amended complaint.
Case No: 5:06cv68/MCR/EMT

hearing (Doc. 10 at 8B-8C). However, Plaintiff has alleged no facts suggesting that he was treated differently from any other group of similarly situated inmates or that Defendant Shaw acted with discriminatory intent. Unless sufficient facts exist, Plaintiff should drop his equal protection claim from his second amended complaint.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Second Amended Complaint**." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims. <u>Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded</u>. Local Rule 15.1, Northern District of Florida. Thus, Plaintiff should not refer the court to any earlier complaint or pleading to demonstrate exhaustion or supply factual support for his claims. Plaintiff is also advised that his second amended complaint should be <u>legible and succinct</u> and include only those facts necessary to his claims.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a complaint form for use in prisoner actions under 42 U.S.C. § 1983.  This case number should be written on the form.

2. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and marked "Second Amended Complaint."  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

3. Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this 26th day of July 2006.

>/s/ *Elizabeth M. Timothy*
>**ELIZABETH M. TIMOTHY**
>**UNITED STATES MAGISTRATE JUDGE**